UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DAVON RAPHEL CHUNN,

        Petitioner,

v.

LES PARISH,

        Respondent.
_____/

Case No. 1:18-cv-1071

Honorable Paul L. Maloney

## **OPINION**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

    I.       Factual Allegations

Petitioner Davon Raphel Chunn is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility (ECF) in Manistee, Michigan. Following a jury trial in the Macomb County Circuit Court, Petitioner was convicted of unlawful imprisonment, Mich. Comp. Laws § 750.349b, and three counts of assault with a dangerous weapon, Mich. Comp. Laws § 750.82. On August 25, 2015, the court sentenced Petitioner as a second habitual offender, Mich. Comp. Laws § 769.10, to prison terms of 48 to 180 on the unlawful-imprisonment conviction and 12 to 72 months on each of the felonious-assault convictions.

Petitioner appealed his convictions and sentences to the Michigan Court of Appeals, raising three issues:

    I.      OTHER ACTS TESTIMONY ALLEGING A CONTINUING DANGER TO SENIOR CITIZENS REQUIRES A NEW TRIAL

    II.     WHERE FLIGHT IS ABSENT, IT WAS ERROR TO INSTRUCT THE JURY ON FLIGHT.

    III.    SCORING OF OV1 AND OV3 WAS IMPROPER.

(Attach. to Pet., ECF No. 1-1, PageID.25.) In an unpublished opinion issued on March 2, 2017, the court of appeals rejected all appellate grounds and affirmed the convictions and sentences. *People v. Chunn*, No. 329764, 2017 WL 829798 (Mich. Ct. App. Mar. 2, 2017). Petitioner sought leave to appeal to the Michigan Supreme Court, raising the same issues. The supreme court denied leave to appeal on September 12, 2017. *People v. Chunn*, 900 N.W.2d 646 (Mich. 2017).

In Petitioner's initial petition, he raised two grounds for relief, as follows:

    I.      [T]he decision of the Michigan Supreme court should not be denied and upheld. Under U.S. Const. 6 and 14 amendment. In the Michigan Supreme Court a misjustice has occurred. When this court of the Michigan Supreme Court at issue one; two; three of the MCOA is clearly wrong important injustice to me. [T]he decision conflict with a Supreme Court decision issue

> two. MCOA decision is clearly wrong. Issue three should have been granted. All of which come from MCOA F. Randall Karfonta (P15713) Ineffective Assistance of counsel[.]
>
> II. MCOA should have grant Leave to Appeal statements of Questions Presented (Exhibit B) the (issue one) other act testimony alleging a continuing danger to senior citizen; (Issue two) where flight is absent it was error to instruct the jury on flight; (Issue three) scoring of OV1 and OV3 was improper. Enter by MCOA F. Randall Karfonta (P15713). Where Ineffective and misleading and without proper investigation. Exhibit B[.]

(Pet., ECF No. 1, PageID.6-7.) Because Petitioner's statement of issues raised matters that had not been exhausted in the state courts, and because fewer than sixty days remained in Petitioner's period of limitation, the Court directed Petitioner to demonstrate: (1) good cause for failing to exhaust his claims before filing the habeas petition; (2) that his unexhausted claims were not plainly meritless; and (3) that he had not engaged in intentionally dilatory litigation tactics. (Op., ECF No. 6, PageID.80.) The Court also offered Petitioner the alternative of filing an amended petition setting forth only his exhausted claims. (*Id.*, PageID.81.) Petitioner chose to file an amended petition (ECF No. 8) setting forth only the three claims that he raised in the Michigan appellate courts.

Petitioner describes the facts underlying the criminal prosecution as follows:

> Petitioner's convictions arise from an incident that took place on June 21, 2014, at a senior living apartment building in Mt. Clemens, Michigan. Petitioner and his girlfriend, Shanna Dobbs, visited Dobbs's aunt on the second floor of the apartment building. Brandon Ballentine and Jalisa Patterson accompanied Petitioner and Dobbs. At around 9:00 PM, the four left the apartment of Dobbs's aunt, and they used the stairwell to get into the apartment lobby. At the same time, many of the senior residents in the building were in the lobby area of the apartment building. Ann Mihlader, Gloria Carlson, Joetta Carey, and Kristine Fisher, all senior residents, were in the lobby of the apartment building, and they were getting ready to head back to their apartments. Louise Biange and Margaret Bartoski were cleaning up a multi-purpose room adjoining the lobby. Sherman Fisher was in a wheelchair near the entrance of the lobby.
>
> The residents watched as Petitioner entered the lobby room from the stairwell with a fire extinguisher in his hand. As the doors to the stairwell opened, witnesses heard someone yelling, "fire, fire, happy birthday, fire." The residents testified that

> Petitioner started spraying the fire extinguisher, filling the lobby with a thick smoke. The senior residents testified that the smoke was so thick that they were having a hard time breathing. A number of the residents attempted to exit out the front entrance, but Ballentine held the doors shut. The residents could hear Petitioner and Ballentine laughing. Carlson testified that Petitioner sprayed her in the face, and her eyes, chest, and lungs instantly felt like they were on fire. Bartoski was also sprayed directly in the face. Mihlader asked defendant why he was doing this, and in response, defendant said, "shut up, God damn bitch, just shut up." According to Carey, Petitioner also told her, "shut up, bitch," and the smoke started to burn her eyes, mouth, and throat. Eventually Ballentine let the doors go, and Petitioner and Ballentine ran to Dobb's vehicle in the parking lot and drove off. The senior residents finally exited the building as paramedics, the fire department, and law enforcement were arriving. The fire department administered oxygen to many of the senior residents. Carlson and Bartoski, having been sprayed directly in the face, were put on an I.V. and rushed to the hospital until they were released four-days later.

(Pet'r's Appl. for Leave to Appeal, ECF No. 1-1, PageID.17-19.)

  II. <u>AEDPA Standard</u>

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the

Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

       III.     <u>Non-cognizable State Law Claims</u>

Petitioner states his habeas issues as follows:

I.     Other act testimony alleging a continuing danger to senior citizen.

II.     Where flight is absent it was error to instruct the jury on flight.

III.     Scoring of OV 1 and OV3 was improper.

(Am. Pet., ECF No. 8, PageID.88-91.) The statement of issues in the amended petition is identical to the statement of issues in his Michigan appellate court briefs[1] with respect to Issues II and III; and it is a close approximation with respect to Issue I. Considering only this brief statement, it does not appear that Petitioner has raised any federal constitutional issues. Review of the arguments raised in the Michigan Court of Appeals, however, reveals that Petitioner raised state law arguments as well as federal constitutional arguments with respect to each issue. The Michigan Court of Appeals rejected each of Petitioner's arguments.

Petitioner offers no elaboration of his habeas issues beyond that presented in his appellate briefs. Accordingly, the Court presumes that Petitioner intends to raise state law issues and federal constitutional issues by way of his petition as well. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28

---

[1] Petitioner attaches his application for leave to appeal filed in the Michigan Supreme Court as Exhibit A to his initial petition. (ECF No. 1-1, PageID.17-21.) He attaches his Michigan Court of Appeals brief as Exhibit B. (ECF No. 1-1, PageID.24-41.)

U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Moreover, it is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).

To the extent Petitioner seeks relief based on state-law errors, his claims are not cognizable on federal habeas review.

IV. Other Bad Acts

Petitioner's argument regarding the improper admission of "other bad acts" evidence includes a federal constitutional component. (Pet'r's Br. on Appeal, ECF No. 1-1, PageID.35) ("[T]his irrelevant prejudicial testimony . . . [had t]he effect of . . . deny[ing] Defendant his right to a fair trial and due process of law.") The testimony at issue was one sentence from the testimony of victim Louise Biange. She testified as follows:

[*Prosecutor*]: Has this incident affected you emotionally?

[*Biange*]: Definitely.

7

| | |
|---|---|
| *Prosecutor*: | How so? |
| *Biange*: | Fear. You are living in a senior complex thinking you will be safe in a senior complex and and [sic] you have something like this happen. Now it is like you are constantly looking behind your back. You are afraid to go out and do anything. *I walked down the road one day and that vehicle they got out in tried to hit [Bartoski].* |
| *Prosecutor*: | How has this affected you and your friend [Bartoski] emotionally? |
| *Biange*: | Very greatly. |
| *Prosecutor*: | Has her personality changed? |
| *Biange*: | Definitely. |
| *Prosecutor*: | How so? |
| *Biange*: | She is very skittish, jumpy, very quiet. She is more to herself now. When she first moved in she was more outgoing. |
| *Prosecutor*: | So you noticed a change before the fire extinguisher and after with your friend? |
| *Biange*: | Yes. |

*Chunn*, 2017 WL 829798, at *2 (emphasis in original). Petitioner contends the sentence in italics was "other acts" evidence that rendered his trial unfair and warranted a new trial. The court of appeals disagreed:

> Here, we conclude that the trial court did not abuse its discretion in failing to declare a mistrial—although we again note that it is not apparent from the record that defendant even asked for a mistrial. First, there is no indication that the prosecutor knew in advance that the witness would give the unresponsive testimony or conspired with or encouraged the witness to give that testimony. Biange's testimony was unresponsive to the question asked, which expressly pertained to "the incident" at issue. The prosecutor immediately redirected the witness to answer the question he did ask, and did not follow-up on or ask the witness to elaborate on what she meant by her response.
>
> Second, the unsolicited remark was brief and not so egregious that the prejudicial effect could not be removed. Importantly, "unresponsive answers may work a certain amount of mischief with the jury, but they are generally not considered prejudicial errors unless egregious or not amenable to a curative instruction." *People v. Mahone*, 294 Mich. App. 208, 213; 816 N.W.2d 436 (2011) (quotation marks and citation omitted). In *Mahone*, this Court determined that unresponsive

> testimony from a police officer "could easily have been struck, [but] defense counsel did not make a request to strike, possibly because at that point, it would simply have drawn more attention to the statement." *Id.* Here, as in *Mahone*, the trial court noted that Biange's statement could have been struck from the record, but defense counsel did not want to highlight the testimony in front of the jury. The trial court stated, "I understand you did not object to it at the time and you do not want to highlight that kind of statement in front of the jury . . . ." For that reason, the trial court did not give a curative instruction, although it could have. Moreover, the statement was not so egregious that an instruction could not have cured the error. It was a stray remark that was brief, did not reference defendant, and was never elaborated upon or addressed again. Therefore, the trial court's failure to declare a mistrial was within the range of reasonable and principled outcomes and does not amount to an abuse of discretion. For this same reason, we also reject defendant's contention that he was denied due process or a fair trial.

*Chunn*, 2017 WL 829798, at *3.

As the Supreme Court explained in *Estelle*, 502 U.S. 62, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the

9

Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard.

There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of "other bad acts" evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Because there was no constitutional violation in the admission of the "other bad act" evidence, the state court decision was "far from" an unreasonable determination of the facts in light of the evidence presented. *Clark v. O'Dea*, 257 F.3d 498, 502 (6th Cir. 2001); *see also Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Accordingly, Petitioner is not entitled to habeas relief on this issue.

V. "Flight" Jury Instruction

Petitioner objects to the jury instruction regarding flight which read as follows:

There has been some evidence that [defendant] tried to run away after the alleged crime. This evidence does not prove guilt. A person may run or hide for innocent reasons such as panic, mistake or fear. However, a person may also run or hide

because of a consciousness of guilt. You must decide whether the evidence is true
and if true, whether or not it shows [defendant] had a guilty state of mind.

*Chunn*, 2017 WL 829798, at *4. Petitioner objects to the use of the instruction because he contends there was no evidence he fled. He simply left.

Petitioner raised his objection at trial. "[T]he trial court explained that a flight instruction is proper 'when there is some evidence of flight,' and it determined that 'there was some testimony that indicated that [defendant] essentially got into a car afterwards and left the scene.'" *Chunn*, 2017 WL 829798, at *4. The Michigan Court of Appeals agreed:

> "[J]ury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *People v. Pinkney*, ⎯⎯ Mich. App. ⎯⎯; ⎯⎯ N.W.2d ⎯⎯ (Docket No. 325856); slip op. at 9 (2016) (quotation marks and citation omitted). "[E]vidence of flight is admissible to support an inference of consciousness of guilt and the term flight includes such actions as fleeing the scene of the crime." *People v. Unger*, 278 Mich. App. 210, 226; 749 N.W.2d 272 (2008) (quotation marks and citation omitted). While defendant argues that there must be some evidence that he feared apprehension before the trial court can read a flight instruction, our Supreme Court has held that a "prosecutor is not required to prove that [the defendant] left the jurisdiction because he was 'motivated' by fear of apprehension. If that was required, flight evidence would rarely be admissible because it is obviously difficult to prove somebody's motives." *People v. Smelley*, 485 Mich. 1023, 1023; 776 N.W.2d 310 (2010). The jury must determine "whether evidence of flight occurred under such circumstances as to indicate guilt." *Unger*, 278 Mich. App. at 226.

\* \* \*

> At trial, one of the senior residents stated that defendant "ran out of the building laughing and through [sic] the fire extinguisher on the ground when [he] saw the police coming." Another witness testified that defendant and Ballentine "ran down the sidewalk to the end of the parking lot and got into this car where the two girls were driving in." The witness said, "They took off. And one of the residents tried to run after to stop them but they, you know, slid down in the seat so they—he didn't know what car they got into." Finally, another witness watched as the four people, including defendant, drove off. There was also testimony that the police, fire department, and paramedics were on the scene as the senior residents made it out of the building, further showing that defendant was leaving as law enforcement was arriving. In light of this testimony, we conclude that there was adequate evidence of flight, and the trial court did not abuse its discretion when it read the flight instruction.

11

*Chunn*, 2017 WL 829798, at *4-5 (footnote omitted).

Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). *See also Estelle*, 502 U.S. at 75 (erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Id.*

Petitioner offers federal authorities cautioning that flight evidence may not be particularly probative. *See, e.g., Wong Sun v. United States*, 371 U.S. 471, 483 n.10 (1963) ("[W]e have consistently doubted the probative value in criminal trials of evidence that he accused fled the scene of an actual or supposed crime."). Such cautions, however, do not render evidence of flight inadmissible or instructions regarding flight unconstitutional. Indeed, the Sixth Circuit recently considered and refused to grant a certificate of appealability regarding an identical challenge to the same instruction Petitioner challenges:

> In his final claim, Brown argues that the trial court erred by overruling his objection to a jury instruction on flight . . . . "A challenge to a jury instruction is not to be viewed in 'artificial isolation,' but rather must be considered within the context of the overall instructions and trial record as a whole." *Hanna v. Ishee*, 694 F.3d 596, 620–21 (6th Cir. 2012) (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). To obtain habeas relief, a petitioner must demonstrate that the instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).
>
> Reasonable jurists would not debate that the trial court's instruction in this case did not infect the entire trial and did not violate Brown's right to due process. Contrary to Brown's characterization of the instruction, the trial court did not instruct the jury that Brown fled. Rather, the trial court explained to the jury that evidence had been presented that could indicate that Brown tried to run away or hide after the shooting, but that, if he did, his flight did not prove guilt; rather, the trial court noted

12

> that a person could run for innocent reasons such as fear or panic. *Brown*, 2013 WL 2319546, at *3. The trial court instructed the jury to decide, first, whether there was evidence of flight and, second, whether it demonstrated that Brown had a guilty state of mind. *Id*. This court has determined that this type of flight instruction—which directs jurors to make their own determination as to whether a defendant fled—is not so prejudicial as to render an entire trial unfair. *See Burton v. Renico*, 391 F.3d 764, 778 (6th Cir. 2004) (citing *Mitzel v. Tate*, 267 F.3d 524, 536 (6th Cir. 2001)). This claim does not deserve encouragement to proceed further.

*Brown v. Gidley*, No. 17-2071, 2018 WL 2057079, at *3 (6th Cir. May 3, 2018).

Petitioner has failed to demonstrate that the Michigan Court of Appeals determination upholding the flight instruction is contrary to, or an unreasonable application of, clearly established federal law. Indeed, he offers no Supreme Court precedent holding impermissible the use of the flight instruction here—an instruction that tells the jurors to consider the evidence and make their own determination as to whether the defendant fled and, if so, whether that flight supports a conclusion of consciousness of guilt. Accordingly, Petitioner is not entitled to habeas relief on this claim.

VI. <u>Improper Scoring of OV1 and OV3</u>

With respect to Offense Variable (OV) 1, the Michigan Sentencing Guidelines direct that the sentencing court assess 20 points for the "aggravated use of a weapon." Mich. Comp. Laws § 777.31(1). It is considered an aggravated use where a victim has been exposed to a harmful chemical substance. Mich. Comp. Laws § 777.31. A "harmful chemical substance," in turn, "means a solid, liquid, or gas that through its chemical or physical properties, alone or in combination with 1 or more other chemical substances, can be used to cause death, injury, or disease in humans, animals, or plants." Mich. Comp. Laws § 750.200h. The Michigan Court of Appeals held that "the fire retardant in this case was a harmful chemical substance because it can cause death, illness, injury, or disease through its chemical or physical properties." *Chunn*, 2017

13

WL 829798, at *6. That holding binds this Court. *See Wainwright*, 464 U.S. at 84; *Stumpf*, 722 F.3d at 746 n. 6; *Thomas,* 898 F.3d at 700 n.1.

"OV 3 considers the extent of injury to a victim." *Chunn*, 2017 WL 829798, at *6. The trial court assessed 25 points because the court concluded that the victims suffered permanent incapacitating injuries. The court of appeals noted that "one witness said that she continues to spit up and her 'eyes get pussed up and seal shut.' Another witness now requires the use of medicinal eye drops." *Id*. Petitioner does not contest this evidence nor does he claim that the trial court's determination regarding the injuries was not supported by a preponderance of the evidence. Instead, he claims that it is improper to use facts found by a judge to increase his minimum sentence.[2]

Petitioner's argument is based on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, and reiterated the rule that any fact that increased the maximum sentence

---

[2] Petitioner makes this claim with regard to OV 1 as well.

must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

In *Booker*, 543 U.S. at 220, the Supreme Court determined its conclusion with regard to the state sentencing guideline scheme in *Blakely* would also apply to the federal sentencing guidelines. One group of five justices concluded that the federal sentencing guidelines conflicted with the Sixth Amendment. Another group of five justices determined the appropriate remedy was to make the guidelines discretionary.

Subsequently, in *Alleyne*, 570 U.S. at 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. The Sixth Circuit subsequently concluded that *Alleyne* rendered unconstitutional Michigan's mandatory sentencing regime as it existed at the time of the *Alleyne* decision. *Robinson v. Woods*, 901 F.3d 710, 716-17 (6th Cir. 2018).

Petitioner was not sentenced until more than two years after the *Alleyne* decision. By the time of Petitioner's sentencing, Michigan's sentencing regime was no longer mandatory. In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), in a 5-2 decision, the Michigan Supreme Court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional. The Court's remedy, consistent with *Booker*, was to make the guidelines advisory only. *Id.* at 520-21.

Petitioner was sentenced four weeks after the *Lockridge* decision. Therefore, at the time of his sentencing, Michigan's sentencing guidelines were no longer mandatory and no longer implicated Petitioner's Sixth Amendment right to trial by jury. The Michigan Court of Appeals relied on that reasoning when it rejected Petitioner's claim. *Chunn*, 2017 WL 829798, at *7 n.3 ("[D]efendant was sentenced after July 29, 2015, the date *Lockridge* was issued and, in fact, the

trial court acknowledged that the sentencing guidelines were only advisory."). Petitioner has failed to demonstrate that the state appellate court's decision was contrary to, or an unreasonable application of, *Apprendi*, *Blakely*, *Alleyne* or *Booker*, the clearly established federal law regarding this issue. Accordingly, Petitioner is not entitled to habeas relief.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.

Dated: December 19, 2018 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge